## S11A1914. HILL v. THE STATE.
### (722 SE2d 708)

CARLEY, Presiding Justice.

Benjamin Tinno Hill was indicted for the malice murder of Tommy Lee Head, an alternative count of felony murder during the commission of aggravated assault and possession of a firearm by a convicted felon, and a separate count charging the underlying weapons offense. After a jury trial, Hill was acquitted of malice murder and found guilty of both remaining counts. The trial court entered judgments of conviction on the guilty verdicts and sentenced Hill to life imprisonment for felony murder and to a consecutive five-year term for the separate firearms charge. Following the grant of an out-of-time appeal, a motion for new trial was denied. However, the trial court vacated the separate sentence on the weapons charge pursuant to a concession by the State. Hill appeals, understandably raising no error regarding the vacated sentence. See *Dunn v. State,* 263 Ga. 343, 345 (2) (434 SE2d 60) (1993).*

1. Construed most strongly in support of the verdicts, the evidence shows that Hill, who was a convicted felon, was driving a vehicle carrying his infant son and Flora Shepherd when the victim began following them. Ms. Shepherd was the baby's mother and the victim's girlfriend. Hill became increasingly upset, indicating that he would lead the victim to some apartments and shoot him. Hill saw a patrol car and turned around to travel in the opposite direction. Hill stopped at a traffic light, and the unarmed victim exited his vehicle and approached Ms. Shepherd, angrily cursing at her, but kept his hands in his pockets and took no threatening action. The victim's

---

* The murder occurred on February 5, 1993, and the grand jury returned an indictment on January 14, 1994. The jury found Hill guilty on January 11, 1995, and the trial court entered the judgments of conviction and sentences on the guilty verdicts on February 7, 1995. The trial court granted a motion for out-of-time appeal on November 25, 2008, and a motion for new trial was filed on December 23, 2008 and amended on February 21, 2011. That motion was denied and the separate sentence for the weapons offense was vacated on May 24, 2011. Hill filed the notice of appeal on June 2, 2011. The case was docketed in this Court for the September 2011 term and submitted for decision on the briefs.

demeanor changed and, as he began to get back into his car, he was shot in his pelvis. Ms. Shepherd turned to see Hill with a gun in his hand pointed across her and out the window. The victim drove away, crashed into a guardrail and bled to death from the gunshot wound. Meanwhile, Hill also drove away, told Ms. Shepherd twice that he hated that he shot the victim, and abandoned her and the baby with the car. Hill later asked Ms. Shepherd if she was going to tell on him. Nearly a year later, Hill was found in Texas living under an assumed name.

Hill argues that no evidence was presented at trial that the person who was arrested and tried is the same as the person named in the indictment and identified by witnesses as someone named Benjamin Hill who shot and killed the victim. However, Hill could not be directly identified in person by any witness at trial, because after jury selection, he "voluntarily absented himself from his trial[.] [H]e should not be allowed to profit from this action by winning a reversal of the conviction because he was not there." *Smith v. State,* 184 Ga. App. 739, 741 (362 SE2d 384) (1987). Hill "made positive identification impossible by absenting himself from trial, and we decline to create a rigid legal standard for identification that would encourage defendants to violate their release conditions by failing to appear." *State v. Rocha-Rocha,* 935 P2d 870, 873 (1) (Ariz. App. 1996). In this case, Hill gave the arresting officer a statement admitting that he had shot the victim, Hill appeared in court for the first day of trial, and he never made identity an issue at trial, instead asserting self-defense. Accordingly, we conclude that Hill was sufficiently identified as the person who shot the victim and that there was ample evidence to enable a rational trier of fact to find Hill guilty beyond a reasonable doubt of felony murder. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hill contends that his right to be present at all stages of the trial was violated when trial counsel waived Hill's presence without his consent.

"A defendant may waive his right to be present at trial ([cit.]), and his voluntary absence from the trial constitutes such a waiver. [Cit.]" *Dawson v. State,* 283 Ga. 315, 322 (5) (658 SE2d 755) (2008). Therefore, a waiver by defense counsel is not the only method by which the right to be present may be waived. On the morning of the second day of trial, Hill told his attorney by telephone that he had been involved in an automobile collision and would come with an incident report in 30 minutes. However, Hill did not ever arrive or offer any reasonable explanation. After a bonding company later surrendered Hill, he told the trial court at sentencing that he did everything within his power not to be right there before the court. In its order denying the motion for new trial, the trial court noted the

absence of any evidence to support Hill's claim of an automobile collision and found that he had "voluntarily absented himself from trial after jeopardy attached."

> In this case the sequence of events surrounding [Hill's] absence supports the trial court's finding that [his] absence on the second and third days of trial was voluntary. "The burden of determining the cause of the defendant's absence was on [his] counsel, not on the trial judge." [Cit.] "[Hill] voluntarily absented [himself] from the court since [he] was free on bail and clearly knew the proceedings had begun . . . ." [Cits.]

*Estep v. State*, 238 Ga. App. 170, 172 (1) (518 SE2d 176) (1999). "Confrontation rights are personal to the accused and are waived when the accused is free on bail and voluntarily absents himself from the trial. [Cits.]" *Byrd v. Ricketts*, 233 Ga. 779, 780 (213 SE2d 610) (1975). See also *Taylor v. United States*, 414 U. S. 17 (94 SC 194, 38 LE2d 174) (1973).

3. After Hill's arrest in Texas, he was advised of his *Miranda* rights and initially chose not to make a statement, but later made a statement which was not recorded. Defense counsel cross-examined the arresting officer regarding his failure to record the statement and the fact that his memorialization of that statement was not verbatim but was his interpretation of what Hill said. On redirect examination, the prosecutor asked the officer whether he had given Hill the opportunity to make a written statement and what his response was. The officer testified that he did give Hill that opportunity and that Hill did not want to sign a written statement or make a recorded statement but would nevertheless tell his story. A motion for mistrial was made by defense counsel and denied by the trial court. On appeal, Hill contends that the officer's testimony on redirect constitutes a prohibited comment on Hill's constitutional right to remain silent.

This Court has held that a contention that a law enforcement officer improperly commented on the accused's right to remain silent by testifying that he refused to give or sign a written statement is inapposite where, as here, the accused waived his rights pursuant to *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) and made an oral statement. *Bethea v. State*, 251 Ga. 328, 330 (6) (304 SE2d 713) (1983). See also *Moore v. State*, 207 Ga. App. 802-803 (430 SE2d 115) (1993) (refusal to sign a waiver form or a confession does not constitute invocation of the right to remain silent). Likewise, "[c]ourts in other jurisdictions have held that a mere refusal to reduce an oral statement to a written statement does not amount to

the invocation of the right to remain silent. [Cits.]" *People v. Williams*, 737 NW2d 797, 800 (Mich. App. 2007). See also *Crosby v. State*, 784 A2d 1102, 1110 (III) (Md. 2001). In *Connecticut v. Barrett*, 479 U. S. 523, 528 (107 SC 828, 93 LE2d 920) (1987),

> the Supreme Court reiterated that "(t)he fundamental purpose of the Court's decision in *Miranda* was 'to assure that the individual's right to choose between speech and silence remain unfettered throughout the interrogation process.' " [Cit.] It is the choice between speech and silence that must remain unfettered, not the choice between *different forms* of speech. If, after proper advisement of *Miranda* rights, an accused states, "I'll talk to you, but I don't want my statement to be video/tape recorded" or "I'll give you a verbal statement, but I will not make a written statement," are we to conclude . . . that the accused has invoked his or her *Miranda* rights and as such, that the police are thereafter forbidden from questioning the accused? . . . Such a conclusion stretches the purposes of *Miranda* to illogical and irrational extremes. That the defendant chooses one form of speech over another does not necessarily signify, absent some additional evidence, that the defendant has chosen silence over speech. (Emphasis omitted in part.)

*Crosby v. State*, supra at 1109-1110 (III). Furthermore,

> "(t)he accuracy and integrity of oral incriminating statements are frequent targets of defense counsel who often suggest the unfairness of the use of oral statements of an accused who has not been afforded the opportunity to put his statement in writing. It is only reasonable that the State be permitted to elicit the fact that the accused was given the opportunity and declined."

*San Martin v. State*, 705 S2d 1337, 1346 (Fla. 1997). Accordingly, it is clear under the circumstances of this case that

> the officer's testimony did not constitute an impermissible comment on [Hill's] invocation of his right to silence. [Hill] did not invoke his right to silence. On the contrary he waived it, and after indicating that he would rather not put his statement in writing, [Hill] gave an oral statement. (Emphasis omitted.)

*People v. Hendricks*, 687 NE2d 1328 (N.Y. 1997). Moreover, even if

the officer's testimony could be considered a comment on Hill's invocation of the right to silence, defense counsel opened the door thereto, and the prosecutor was well within his rights to follow up on the cross-examination of the officer. See *Fallen v. State*, 191 Ga. App. 233 (381 SE2d 410) (1989).

4. Hill complains of two omissions from the trial court's jury instructions on felony murder. "Effective for trials conducted on or after July 1, 2007, [cit.], [OCGA § 17-8-58] changed the prior practice whereby 'counsel could generally reserve objections to the charge pending a motion for new trial or appeal.' [Cit.]" *State v. Kelly*, 290 Ga. 29, 31 (1) (718 SE2d 232) (2011). Hill made an objection which was unrelated to the omissions asserted on appeal and failed to reserve further objections even though he "was tried before the effective date of OCGA § 17-8-58." *Leeks v. State*, 309 Ga. App. 724, 727 (3), fn. 2 (710 SE2d 908) (2011). Thus, he waived the right to assert the purported errors on appeal. *Tillman v. Massey*, 281 Ga. 291, 292 (637 SE2d 720) (2006); *Adams v. State*, 271 Ga. 485, 488 (6) (521 SE2d 575) (1999). Moreover, Hill failed to make any written request for the omitted instructions. "Thus, we will not review this enumeration of error. [Cits.]" *Adams v. State*, supra.

5. Hill further complains that the trial court erred in giving the following instruction on his justification defense:

Self-defense, as its nomenclature implies, is defensive in nature and not offensive. Therefore, it is invoked by necessity; and without necessity being present, it is inapplicable. Thus, the amount of force which can be utilized is based upon necessity and under no circumstances may legitimate self-defense exceed the bounds necessary for its use. Where the force used exceeds that necessary for defense of the person, the law will consider the defender the aggressor; and if his act results in a homicide, the offense is at least manslaughter.

Hill waived the right to assert error in this instruction, as he failed either to object thereto or reserve further objections. *Barner v. State*, 276 Ga. 292, 294 (3) (578 SE2d 121) (2003). See also *Tillman v. Massey*, supra; *Adams v. State*, supra. Furthermore, without objection and pursuant to Hill's request, the trial court recharged the jury on self-defense, including the portion to which Hill objects on appeal. See *Parker v. State*, 282 Ga. 897, 899 (5) (655 SE2d 582) (2008).

Moreover, even if Hill did not waive the error asserted on appeal, we find no reversible error. Hill argues that the instruction quoted above failed to include the "reasonable belief" standard, denied him full consideration by the jury of his justification defense, and relieved

the State of its burden to disprove that defense beyond a reasonable doubt. The Court of Appeals has held that the better practice is not to give that instruction or is at least to adjust it to reflect the "reasonable belief" standard. *Stewart v. State*, 262 Ga. App. 426, 429 (2) (585 SE2d 622) (2003). However, it is not error to use the language of which Hill complains where, as here, "the charge as a whole encompasse[s] the elements of self-defense under OCGA § 16-3-21. ' "It is a fundamental rule that jury instructions must be considered as a whole in determining whether the charge contained error." (Cit.)' [Cit.]" *Stewart v. State*, supra. See also *Bailey v. State*, 263 Ga. App. 614, 616-617 (2) (588 SE2d 807) (2003). Here, the trial court fully and adequately charged and recharged on the issue of self-defense, including the statutory language "reasonably believes" in OCGA § 16-3-21 (a), and on the State's burden to prove beyond a reasonable doubt that Hill was not justified. *Bailey v. State*, supra at 617 (2); *Stewart v. State*, supra. Accordingly, we conclude that the instruction on self-defense in this case, when the charge is read as a whole, did not result in reversible error. *Bailey v. State*, supra; *Stewart v. State*, supra.

6. Hill urges that the trial court abused its discretion in failing to allow him to stipulate to his status as a convicted felon. In *Ross v. State*, 279 Ga. 365, 368 (2) (614 SE2d 31) (2005), this Court

> set forth the limited rule that when (1) a defendant's prior conviction is of the nature likely to inflame the passions of the jury and raise the risk of a conviction based on improper considerations, and (2) the purpose of the evidence is solely to prove the defendant's status as a convicted felon, then it is an abuse of discretion for the trial court to spurn the defendant's offer to stipulate to his prior conviction and admit the evidence to the jury.

However, Hill's "prior conviction[ ] for aggravated assault . . . [was] not of the nature likely to 'inflame the passions of the jury,' as was Ross' prior conviction for enticing a child for indecent purposes. [Cit.]" *Allen v. State*, 292 Ga. App. 133, 134 (1) (663 SE2d 370) (2008). See also *Tanksley v. State*, 281 Ga. App. 61, 63 (2) (635 SE2d 353) (2006) (prior conviction for burglary). Moreover, "we conclude, as we did in *Ross*, that any error in failing to permit [Hill] to stipulate to his prior conviction was harmless due to the overwhelming evidence of [his] guilt. [Cit.]" *Curry v. State*, 283 Ga. 99, 101 (2) (657 SE2d 218) (2008). See also *Ross v. State*, supra at 368 (3).

7. Hill also contends that his trial counsel rendered ineffective assistance by failing to request a jury charge on the defense of

habitation under OCGA § 16-3-23 (1).

> In order to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), [Hill] " 'must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. (Cit.)' (Cit.)" [Cit.] " 'On appeal, this Court accepts the trial court's findings of fact, unless they are clearly erroneous. However, the trial court's legal conclusions are reviewed de novo. (Cit.)' (Cit.)" [Cit.] Moreover, " '(d)ecisions on requests to charge involve trial tactics to which we must afford substantial latitude, and "they provide no grounds for reversal unless such tactical decisions are so patently unreasonable that no competent attorney would have chosen them." . . . (Cit.)' (Cit.)" [Cit.]

*Sigman v. State*, 287 Ga. 220, 221 (2) (695 SE2d 232) (2010).
At the hearing on the motion for new trial, Hill's trial counsel testified that he had no recollection whatsoever of the case, which had been tried 16 years earlier. Thus, he could provide no explanation of why he requested a jury charge on self-defense, but not on the defense of habitation.

> The record in this case, therefore, does not support a conclusion that [Hill's] attorney misunderstood the law, as [trial counsel] apparently did in *Benham* [*v. State*, 277 Ga. 516, 517-518 (591 SE2d 824) (2004)]. We are left, therefore, with the presumption that trial counsel's performance fell "within the wide range of reasonable professional assistance." [Cit.] "Where(, as here,) trial counsel does not testify at the motion for new trial hearing about the subject, it is extremely difficult to overcome this presumption." [Cit.]

*Smith v. State*, 309 Ga. App. 241, 248-249 (3) (d) (709 SE2d 823) (2011). Furthermore, at the 1995 trial, "trial counsel was not ineffective for failing to predict either the [1998] addition of the definition of habitation [in OCGA § 16-3-24.1] (which included ['motor vehicle']) to the statutory scheme or the *Benham* holding . . . ." *Cochran v. Frazier*, 377 Fed. Appx. 870, 872 (11th Cir. 2010). "Because there was no basis for an instruction on defense of habitation, [Hill's] trial counsel did not perform deficiently in failing

to request it. [Cits.]" *Philpot v. State*, 311 Ga. App. 486, 489 (3) (716 SE2d 551) (2011).

> Moreover, we conclude that [Hill] has failed to show how he was prejudiced by the failure to request such a charge under the facts of this case. Here, the jury was charged on the law of self-defense, but rejected that defense, [the evidence of Hill's guilt was overwhelming,] and [he] has not established how a jury charge on defense of habitation would have raised a reasonable probability that the outcome of the case would have been different.

*Smith v. State*, supra at 249 (3) (d). See also *McKee v. State*, 280 Ga. 755, 756 (2) (632 SE2d 636) (2006).

*Judgment affirmed. All the Justices concur.*

### DECIDED FEBRUARY 6, 2012.

*Zell & Zell, Rodney S. Zell*, for appellant.

*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Paige Reese Whitaker, Joshua D. Morrison, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.